## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE THE MATTER OF: | ) | |
| | ) | |
| ADESUWA O ALOHAN, | ) | 20 CV |
|           **Plaintiff,** | ) | |
| vs. | ) | Judge |
| | ) | |
| CBRE, INC., a Delaware Corp., NORTHWESTERN | ) | |
| MEMORIAL HOSPITAL HEALTHCARE, an | ) | |
| Illinois NFP Corporations, ERNIE PIERZ, Individually and in | ) | Maj Judge |
| his Official Capacity as Senior Managing Director, RICHARD | ) | |
| SAULIG, Individually and in His Official Capacity as Alliance | ) | |
| Director, MICHAEL HUDSON, Individually and in His Official | ) | |
| Capacity as Senior Facilities Manager, JOSE HERNANDEZ, | ) | |
| Individually and in His Official Capacity as Chief Engineer, | ) | |
| CHARLES MCLOGGIN, Individually and in His Official | ) | |
| Capacity as Alliance Director of Facilities, PEDRO RAVELO, | ) | |
| Individually and in His Official Capacity as Senior Operations | ) | |
| Manager and GRISELDA SILVA, Individually and in Her | ) | |
| Official Capacity as Human Resources Manager, | ) | |
|           **Defendants.** | ) | |

# <u>COMPLAINT</u>

    **COMES NOW THE PLAINTIFF**, **ADESUWA ALOHAN,** by and through her counsel,

Calvita J. Frederick and Associates, and complaining of the Defendant, CBRE, INC, a Delaware

Corporation, NORTHWESTERN MEMORIAL HOSPITAL HEALTHCARE, an Illinois Not-for-Profit

Corporation,  ERNIE PIERZ, Individually and in His Official Capacity as Senior Managing Director,

RICHARD SAULIG, Individually and in His Official Capacity as Alliance Director, MICHAEL HUDSON,

Individually and in His Official Capacity as Senior Facilities Manager, CHARLES MCLOGGIN,

Individually and in His Official Capacity as Alliance Director of Facilities, JOSE HERNADEZ, Individually

and in His Official Capacity as Chief Engineer, PEDRO RAVELO, Individually and in His Official Capacity

1

as Senior Operations Manager, and GRISELDA SILVER, Individually and in Her Official Capacity as Human Resources Manager, alleges as follows:

## **THE PARTIES**

1. **PLAINTIFF ADESUWA ALOHAN** ("ADESUWA" or "Plaintiff") is a female, Black citizen of the United States, and at all times relevant thereto was a resident of the State of Illinois, residing in the County of Cook, City of Chicago. My country of origin is Nigeria.

2. **DEFENDANT CBRE, INC ("CBRE" or "Defendant"),** is **a Delaware Corporation**, licensed to do business within the State of Illinois having its principal office in Los Angeles, California and having a location within the State of Illinois, County of Cook, at 541 North Fairbanks, Chicago, Illinois.

3. **DEFENDANT NORTHWESTERN MEMORIAL HOSPITAL HEALTHCARE, ("NORTHWESTERN" or "Defendant"), an Illinois NFP Corporations**, licensed to do business within the State of Illinois having its principal office in Chicago, Illinois at 211 East Ontario St. Suite 1800 and also having a location at within the State of Illinois, County of Cook, at 541 North Fairbanks, Chicago, Illinois, where ADESUWA was assigned to work..

4. **DEFENDANT ERNIE PIERZ** ("ERNIE" or "Defendant(s)") is a male, White citizen of the United States, and at all times relevant thereto was a resident of the State of Illinois, residing in the County of Cook, City of Chicago, and is or was the Senior Managing Director, CBRE/Northwestern Memorial Hospital Account.

5. **DEFENDANT RICHARD SAULIG** ("RICHARD", "RICK" or "Defendant(s)") is a male, White citizen of the United States, and at all times relevant thereto was a resident of the State of Illinois, residing in the County of Cook, City of Chicago, and is/was ADESUWA's Alliance Director Northwestern Memorial Hospital Account CB Richard Ellis/Global Corporate Services CBRE.

6. **DEFENDANT GRISELDA SILVA** ("GRISELDA" or "Defendant(s)") is a female, White or Hispanic citizen of the United States, and at all times relevant thereto was a resident of the State of Illinois, residing in the County of Cook, City of Chicago, and was ADESUWA's Human Resources ("HR") manager at CBRE.

7. **DEFENDANT MICHAEL HUDSON** ("MICHAEL" or "MIKE", "Defendant(s)") is a male, White citizen of the United States, and at all times relevant thereto was a resident of the State of Illinois, residing in the County of Cook, City of Chicago, and was ADESUWA's the Senior Facilities Manager at CBRE. Mike has recently been promoted to Director of Facilities.

8. **DEFENDANT JOSE HERNADEZ** ("JOE" or "Defendant(s)") is a male, Hispanic citizen of the United States, and at all times relevant thereto was a resident of the State of Illinois, residing in the County of Cook, City of Chicago, and served as the Chief Engineer Feinberg/Galter Northwestern Account/Chicago CBRE.

9. **DEFENDANT PEDRO RAVELO** ("PEDRO" or "Defendant(s)") is a male, Hispanic citizen of the United States, and at all times relevant thereto was a resident of the State of Illinois, residing in the County of Cook, City of Chicago, and is/was Senior Operations Manager CBRE/Northwestern Memorial Hospital..

10. **DEFENDANT CHARLES MCLOGGIN** ("CHARLES" or "Defendant(s)") is a male, White citizen of the United States, and at all times relevant thereto was a resident of the State of Illinois, residing in the County of Cook, City of Chicago, and the current Alliance Director of Facilities at CBRE.

11. CBRE employs more than 500 people at their Chicago location.

12. NORTHWESTERN employs more than 500 people at their Chicago location

13. At all relevant times, Defendants Ernie, Griselda, Richard, Charles, Pedro, Michael and Joe were

3

employed by Defendant CBRE, and Defendant NORTHWESTERN and were "employees" of Defendant CBRE and Defendant NORTHWESTERN within in the meaning of 42 U.S.C. § 2000e(f).

## JURISDICTION AND VENUE

14. The claims against the Defendants herein are based upon race discrimination (Black), sex (female) and national origin (Nigerian) pursuant to Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 1981 which prohibits discrimination on the basis of race, sex and national origin and further prohibits retaliation for opposing or making charges regarding discrimination.

15. Jurisdiction is conveyed upon this Court as the claims arise under the laws of the United States of America pursuant to 28 U.S.C. § 1343.

16. Venue is appropriate in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391 as ADESUWA'S residence, at all times pertinent hereto, and Defendants' businesses, as well as all events giving rise to this claim occurred within the counties served by this Court.

## NATURE OF THE ACTION

17. This is an action brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.,* which prohibits discrimination on the basis of race, sex and national origin, and further prohibits retaliation for opposing or making charges regarding discrimination, and 42 U.S.C. § 1981 to redress violations of Plaintiffs' Equal Protection rights guaranteed under the Fourteenth Amendment of the United States Constitution.

18. Defendants engaged in deliberate and unlawful policies, patterns, and employment practices intended to and did create and proliferate a hostile and abusive work environment based on race, sex and national origin that included harassment, intimidation, and retaliation.

## FACTS RELEVANT TO ALL COUNTS

4

19. ADESUWA has been employed by NORTHWESTERN since 2006 when she was hired as a Sterile Technician. In 2010 CBRE took over most of the facilities management operations for Northwestern Hospital. Her job was then changed to a facility maintenance worker.

20. In 2012-13 ADESUWA was promoted to the position of Stationary Engineer. Her current position is Stationary Engineer.

21. ADESUWA works in the Feinberg Building, and the Galter Building located at 251 E. Huron Street; in Prentice Women's Hospital, located at 250 E. Superior, and in the Olson Building located at 710 N. Fairbanks Ct. Chicago, Illinois. All four buildings are part of NORTHWESTERN.

22. ADESUWA has a Bachelor of Science degree in Mechanical Engineering obtained in 1998 from Ambrose Ali University in Nigeria. ADESUWA also has a Masters' Degree in Project Management obtained in 2011 from Keller School of Management, DeVry University. ADESUWA is also has a Certified Stationary Engineering: Her license obtained in 2008. Other smaller licenses are required and ADESUWA has obtained all necessary licenses for her job title and the job title of manager as well.

23. A Chlorflororcarbon Refrigeration ("CFC") Universal License is required to work in refrigeration, cooling, and heating and ADESUWA has obtained this license.

24. ADESUWA is a member of International Union of Operating Engineers Local 399, and her position is subject to a Collective Bargaining Agreement. ("CBA")

25. At all times material to this Complaint, ADESUWA proved her industriousness, presented and represented herself in an orderly and respectful manner, and commanded and continues to command the respect of her fellow employees.

26. Additionally, ADESUWA demonstrated her capacity and abilities to perform all job tasks to which she was assigned.

**Failure to Promote**

27. Defendants prevented ADESUWA from rising through the ranks. ADESUWA was passed over for promotions that she deserved. Management positions came and went and CBRE and NORTHWESTERN never elevated ADESUWA to a more senior role. Making matters worse, CBRE and NORTHWESTERN hired less qualified individuals to fill the open position.

28. Defendants have hired four assistant managers in the last ten years. ADESUWA was qualified for each of the promotions. ADESUWA did not apply for two of the assistant manager positions because they were not posted, and she only learned about the position after it had been filed with less qualified and less educated people from outside CBRE.

29. This happened twice: Lana Lang (White, female) was promoted to the position of assistant manager sometime in 2018 and the job opening was not posted within the CBRE system until after the position was filled. Lana may have the Stationary Engineering license. ADESUWA has more education and experience than Lana.

30. In the fall of 2018, Defendants hired Mike Hudson, (White, male) from outside of CBRE Chicago apparently to work on a water management process within NORTHWESTERN. When the project was completed, Defendants promoted Mike to the position of assistant manager and the job opening was not posted within the CBRE system until after the position was filled. Mike may have a bachelor's degree. ADESUWA has more education and experience than Mike. In April of 2019, Mike was promoted to Senior Facilities Manager.

31. After Lana and Mike were hired from the outside ADESUWA called HR in CBRE Texas who informed ADESUWA that the positions recently filled by Lana and MIKE were still open.

32. Robert Smith (White, male) was promoted to the position of facilities manager sometime in approximately 2010. Smith may have the Stationary Engineering license. ADESUWA has more education and experience than Robert. Since his promotion, Robert has been fired from the position of manager and demoted back to the position of stationary engineer.

33. This happened again in approximately 2010 when Ralph Piotrowski (White, male) was promoted to the position of facilities manager. Ralph has only a GED, if he has that. ADESUWA has more education and experience than Ralph.

34. ADESUWA complained to her Human Resources manager, Stephanie Beck, about not being promoted because of her race, sex, age and national origin.

35. ADESUWA also had a conversation with RICK, Alliance Director wherein she complained about being repeatedly passed over for promotions.

36. ADESUWA also went to ERNIE to lodge a complaint about being passed over for promotions because of her race, national origin sex and age.

37. ERNIE advised ADESUWA that she had a good resume and superior education, but did not have the requisite experience

38. ADESUWA complained that she could not get the experience if she was never given the opportunity.

39. ERNIE then offered to mentor ADESUWA and watch her progress in an effort to get her promoted.

40. ERNIE also told ADESUWA that any new projects that came into the building would be an opportunity for ADESUWA to work directly with the assistant manager and to gain the experience.

41. Plaintiff was informed by Misty Mills, Prentice/Olson former manager that any new project that came in she would allow Plaintiff to work with the assistant manager to gain managerial experience.

42. A new project Building Operations System ("BOS") was initiated in 2019 at NORTHWESTERN as a way to save the hospital money and ADESUWA was given the opportunity to work with the assistant manager at Prentice on the BOS project. ADESUWA would accompany the assistant manager, Joseph Bansley, into selected rooms to take samples from the room. Shortly after the BOS project started, Misty Mills left the CBRE NORTHWESTERN account.

43. As part of the BOS, ADESUWA was also required to work with the outside contractors as the point person on the BOS project, in Prentice Women's Hospital.

44. ADESUWA began to hear rumors that they wanted to make Elaine O'Brien (White female) a Lead in the BOS project, because Elaine no longer wanted to work the night shift and wanted to be promoted to days.

45. ADESUWA also began to hear rumors that the lead position in the BOS project was being created for Elaine because Defendants wanted the first female Lead Engineer to be White.

46. Elaine worked the night shift and did not have the opportunity to work with the assistant manager on the BOS because the project was being performed during the day shift. Elaine also had no contact with the outside contractors related to the BOS project.

47. ADESUWA returned to talk to ERNIE and reminded him of what he had said about why ADESUWA was not being promoted. ADESUWA also stated to ERNIE that there is now a position open, for which she not only has the experience, but is currently performing that job.

48. ERNIE agreed with ADESUWA but added the additional condition that ADEWUSA now must convince the managers that she is the best person for the new position.

49. ERNIE also said that the rumors that the position was being created for Elaine was just mass speculation and not a fact.

50. A Lead engineer position was created for the BOS project. Rumor had it that Elaine O'Brien (White) was going to get the position. ADESUWA applied for the Lead position in the BOS project and was denied the position. Instead the promotion to Lead Engineer for the BOS project was awarded to Elaine in March of 2020. Elaine had neither the education, seniority, knowledge nor experience that ADESUWA had.

51. Francisco Monroig was already a Lead and would have been in line for this BOS promotion. Frank was interested in the position and applied for it and the night before the scheduled interview, Frank suddenly withdrew his application. Upon information and belief Frank was given some incentive to withdraw his application because management wanted the position to go to Elaine.

52. In March of 2020 ADESUWA initiated a grievance about the denied promotion by sending a letter to JOE. JOE took ADESUWA's letter to MIKE, which was received by MIKE on March 11, 2020.

53. Neither JOE nor MIKE took any action regarding ADESUWA's grievance for more than a month. The normal time for processing a grievance is two weeks.

54. ADESUWA contacted her union representative, Brian Baker who called the Union and alleged that ADESUWA's grievance was being ignored because to them ADESUWA doesn't matter. Upon information and belief Brian Baker also spoke with Union Representative John O'Connor about ADESUWA'S grievance.

55. Thereafter PEDRO took action regarding the grievance and called a meeting. The meeting took place on or about April 9, 2020. In attendance at that meeting, was ADESUWA, GRISELDA, Brian Baker and PEDRO.

56. PEDRO asked ADESUWA what had happened to her and promised to get back to ADESUWA.

57. On April 10, 2020, PEDRO sent a written memo addressed to Brian Baker and Robert Smith wherein PEDRO indicated that he did not see anything wrong with the way Elaine had been selected for the promotion and therefore he denied the grievance.

58. Upon information and belief, GRISELDA, MIKE, and JOE told PEDRO that Elaine had performed better on the oral interview than had ADESUWA.

59. PEDRO's boss CHARLIE was then contacted regarding the grievance. Another meeting was called. In attendance at this meeting was ADESUWA, CHARLIE, Joe O'Connor and Brian Baker, from the Union Local 399, GRISELDA and MIKE.

60. CHARLES indicated that even if ADESUWA was hired first, had been working on the project, had more education, management chose Elaine because she did better on the interview.

61. CHARLES also stated that even if Elaine only checked one box (doing better on the interview) that he didn't care what ADESUWA had, management wanted Elaine for the position. CHARLES then closed the grievance finding that nothing was done wrong in promoting Elaine over ADESUWA.

62. CHARLES said he believes the decision to promote Elaine was fair, that he doesn't see anything wrong with that process, and that the decision to promote Elaine was justified.

63. MIKE, JOE, GRESELDA, PEDRO, are all final decision makers for CBRE and NORTHWESTERN and all four voted to promote Elaine to the position of Lead Engineer over ADESUWA.

64. The reason given was that Elaine did better in the oral interview than ADESUWA.

65. The reason given was a pretext.

66. The real reason Elaine was promoted over ADESUWA was discrimination based upon race, age and national origin.

67. GRESELDA and PEDRO were responsible for Elaine being chosen instead of ADESUWA.

68. GRISELDA and PEDRO have final decision-making authority about promotions for the CBRE and NORTHWESTERN.

69. PEDRO and ERNIE were responsible for MIKE being promoted and LANA being chosen from the outside for the position to assistant manager instead of ADESUWA. PEDRO and ERNIE have final decision-making authority about promotions for CBRE and NORTHWESTERN.

70. PEDRO also has decision making authority in the granting or denying of Union grievances.

71. MIKE was responsible for Elaine being chosen for the Lead position in the BOS project instead of ADESUWA. MIKE has final decision-making authority about promotions for the CBRE and NORTHWESTERN.

72. JOE was responsible for Elaine being chosen for the Lead position in the BOS position instead of ADESUWA. JOE has final decision-making authority about promotions for the CBRE and NORTHWESTERN

73. CHARLIE was responsible for Elaine being chosen for promotion to Lead Engineer instead of ADESUWA. CHARLIE has final decision-making authority about promotions for the CBRE and NORTHWESTERN. CHARLIE also has decision making authority in the granting or denying of Union grievances.

74. RICHARD was responsible for Ralph and Robert being promoted to the position of facilities manager instead of ADESUWA. RICHARD has final decision-making authority about promotions for CBRE and NORTHWESTERN.

75. The difference in pay between ADESUWA's position and the Assistant Chief position is approximately $4.00 per hour.

**Hostile Work Environment**

76. The discriminatory actions undertaken by ADESUWA's supervisors, described above, fostered an atmosphere of racial animus where not only ADESUWA'S supervisors, but co-workers as well, felt free to direct racially hostile behavior towards her.

77. On several occasions ADESUWA's co-workers have written complaints asking that ADESUWA not be promoted because they cannot understand her because of her African accent. ADESUWA works with the complainants daily giving them instruction which they both understand and follow.

78. On several occasions after they were promoted to managers, Robert and Ralph required ADESUWA to perform housekeeping assignments that were below her grade level, i.e. cleaning the hospital outside revolving doors. Each morning when ADESUWA arrived and began cleaning the revolving doors as required by Robert and Ralph another CBRE/NORTHWESTERN employee would appear, pull up his pant legs, and tell ADESUWA to wipe his shoes. A NORTHWESTERN employee Roberta (last name unknown) saw ADESUWA cleaning the revolving doors and asked why she was doing that and ADESUWA responded that she was required to do so by Robert and Ralph, her managers. Roberta said someone needs to know about this and reported the matter to NORTHWESTERN. Roberta also advised ADESUWA to talk to her HR manager. ADESUWA complained to management and Stephanie Beck in HR and at some point in time, the menial housekeeping tasks were no longer assigned to her.

79. In 2015-2016 Ralph gave ADESUWA an extremely poor performance review, stating that she did not know her job, did not perform her duties, and she didn't come in early to work. Ralph gave ADESUWA a rating of 1 or 2 on a 5-point scale. ADESUWA complained to her Assistant Chief,

Stanley Freeman. Stanley called Ralph and told him of ADESUWA's complaint. Ralph indicated he had been told this about ADESUWA by one of her co-workers Jack Bieniek. Stanley made Ralph change the evaluation because Stanley was ADESUWA's supervisor and worked the night shift with ADESUWA and knew her work. Stanley said any questions about ADESUWA should be addressed to him (Stanley) and not Jack who worked the day shift and was not a supervisor.

80. One of ADESUWA'S colleagues Dan Ryan, (White male) continually harassed her by complaining about her performance and shouting at her in an effort to demean and publicly humiliate her and Sylvester Wince, another Black engineer. Specifically, Dan complained that ADESUWA was not doing her required work on the day shift and leaving it for him when he came in on the afternoon shift. When ADESUWA could not take it anymore she complained to JOE, Kelvin Higginbotham, Assistant Chief, and Dave Niksic. They agreed to talk to Dan, but the harassment did not stop, and they never got back to ADESUWA.

81. Misty Mills came into CBRE NORTHWESTERN as the Senior Facilities Manager for Prentice and Olson and removed ADESUWA from Feinberg Galter to Prentice Olson as the 1st shift Controls Engineer, sometime in late 2017 or early 2018.

82. Later Dan Ryan was also moved to Prentice by Misty Mills. ADESUWA informed Misty of Dan's previous behavior toward her. Upon information and belief Misty advised Dan he would have to continue the work from the day shift wherever ADESUWA had left off, and that if he harassed ADESUWA he would be terminated. Thereafter Dan Ryan stopped harassing ADESUWA.

83. On several occasions ADESUWA has been given explanation as why she was passed over for promotion and what she needed to do to improve her likelihood of being promoted to manager.

84. On many occasions, management has admitted that ADESUWA has superior education and experience to those White employees who were promoted instead of her.

85. ADESUWA has done everything she has been told she must do to get promoted but still has been denied the promotion to manager and/or Lead Engineer when the positions became open.

86. In order to prevent ADESUWA from applying for the management positions, Defendants have failed and refused to post the job openings until after the positions had already been filed by employees currently working for CBRE and/or those from outside of CBRE, as well.

87. ADESUWA has reported the issues of harassment, intimidation, racial slurs, failure to promote to management, HR at CBRE NORTHWESTERN, including to Stephanie Beck and GRISELDA, but to no avail.

88. The pervasive harassment, intimidation, and discrimination aimed at Plaintiff was meant to intimidate and force Plaintiff and other Black employees into accepting their status as a second-class citizen within CBRE NORTHWESTERN, or to resign.

89. Defendants CBRE NORTHWESTERN created a negative workplace environment for Plaintiff through their actions and/or inactions, which conduct constituted a Title VII violation against the Plaintiff and created intolerable working conditions.

90. ADESUWA is not the only CBRE NORTHWESTERN employee who has been subjected to discrimination. Sylvester Wince (Black) was treated the same as Plaintiff, has left the company (constructive discharge) and filed an EEOC charge and federal lawsuit against CBRE. Upon information and belief, Charlie Wilson (Black) filed a grievance with the Union for discrimination, which grievance was ignored. Charlie Wilson has since left CBRE NORTHWESTERN'S employment. Ruthla Robertson (Black, female) was treated the same as Plaintiff and has also left the company's employment.

91. CBRE and NORTHWESTERN were aware of the hostile work environment based upon discrimination when they brought in Michael Booher, Esq. as an independent investigator to explore allegations of violations of CBRE's equal employment opportunity policies, as a result of a complaint filed in 2016. Confidential interviews were conducted with all Black facility workers and the results of the investigation are unknown to the Plaintiff.

92. Elaine O'Brien, (White) Robert Smith, (White) Ralph Piotrowski, (White) Mike Hudson, (White) and Lana Lang (White) were all similarly situated employees and all treated better than the Plaintiff.

93. PEDRO, RICHARD, ERNIE, MIKE, JOE, CHARLES and GRISEDLA, all operated in such manner as to create a hostile work environment for ADESUWA.

94. On or about November 7, 2020, one of ADESUWA's co-workers, tested positive for COVID -19 and the other co-workers were informed. ADESUWA who had worked with this employee was intentionally and deliberately not informed. ADESUWA worked with the co-worker for some hours on his last day at work. ADESUWA became sick over the weekend and stayed home. On the next day ADESUWA called the CBRE NORTHWESTERN Risk Assessment line and was told to stay at home. One of her co-workers called and advised her that Ernie had tested positive for COVID and ADESUWA worked with him and was not advised of his illness. All of the non-Black employees who had worked with Ernie were informed of his illness and told to quarantine. ADESUWA was not told that she had been exposed and has now infected her husband. ADESUWA reported the incident to HR. (See email attached hereto as Exhibit "E").

**NORTHWESTERN is a Joint Employer of Plaintiff for Purposes of Title VII**

95. ADESUWA was provided and required to wear an employee identification badge which identifies her as a Northwestern Employee.

96. ADESUWA was provided, and required to use as her primary email address, a NORTHWESTERN employee email address.

97. ADESUWA was required to adhere to NORTHWESTERN Hospital policies and procedures and must attend regular safety meetings required for NORTHWESTERN employees.

98.  ADESUWA'S managers, including PEDRO whose title is/or was Sr. Operations Manager, CBRE/Northwestern Memorial Hospital, show NORTHWESTERN as their employer.

99. NORTHWESTERN has the right to control and direct the work of CBRE individuals, not only as to the result to be achieved, but also as to the details by which that result is achieved.

100.    NORTHWESTERN outsources the facilities management contract to CBRE and is responsible for their conduct.

101.    ADESUWA works in several buildings owned by NORTHWESTERN which is the same business address for CBRE.


## COUNT I
## VIOLATION OF TITLE VII DISCRIMINATION BASED UPON RACE, SEX. NATIONAL ORIGIN AND RETALIATION AGAINST CBRE

102.    Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through 88 above.

103.    Title VII of the Civil Rights Act of 1964 prohibits discrimination in employment practices and specifically 42 U.S.C.A. § 2000e-2 provides in pertinent part:

> **"(a) Employer practices**
> a.    It shall be an unlawful employment practice for an employer—
> > **(1)** to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;"

104.    Plaintiff has filed this cause subsequent to a timely filing of a Charge of Discrimination against CBRE based upon race, sex, national origin and retaliation with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission, a true and correct copy of which is attached to this Complaint as Exhibit "A".

105.    Plaintiff has filed this cause pursuant to a "Right to Sue Letter" issued by the Equal Employment Opportunity Commission within the statutory time requirement, a true and correct copy of which is attached to this complaint as Exhibit "B".

106.    Plaintiff, at all times pertinent to this Complaint, was a resident within the venue and jurisdiction of this judicial district and was within the protected race group (Black) sex group, (female) and national origin group (Nigerian) as provided by Title VII.

107.    The Defendant at all times relevant to this Complaint, operated and did business within the venue and jurisdiction of this judicial circuit.

108.    During the course of her employment the Plaintiff came under the supervision of ERNIE, RICHARD, MICHAEL, JOE, CHARLES, PEDRO and GRISELDA, who subjected ADESUWA to differential terms and conditions of employment because of her race, sex, and/or national origin in the following manner:  refusing to promote ADESUWA even when she was the most qualified candidate.

109.    The Defendant CBRE'S conduct as previously alleged at length herein and as described in the Charge of Discrimination attached to this Complaint constitutes discrimination based upon race, sex, and national origin, in direct violation of Title VII.

110.    As a result of Defendant's discriminatory conduct, Plaintiff has been damaged in her career and to her person and has otherwise suffered monetary damages.

111.    WHEREFORE, Plaintiff ADESUWA ALOHAN, demands judgment against the Defendant, CBRE, as follows:

A.    For retroactive promotion back to 2010, with all back pay, benefits and other emoluments of employment;

B.    For an award of $300,000 in compensatory damages suffered because of the discrimination;

C.    For Plaintiff's injury to her career, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary damages and fringe benefits;

D.    For attorney's fees and costs of this suit, pursuant to applicable statute; and

E.    For such other and further relief, as is just and equitable.

**COUNT II**
**VIOLATION OF TITLE VII DISCRIMINATION BASED UPON RACE, SEX, NATIONAL ORIGIN AND RETALIATION AGAINST NORTHWESTERN**

112.    Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through 101 above.

113.    Title VII of the Civil Rights Act of 1964 prohibits discrimination in employment practices and specifically 42 U.S.C.A. § 2000e-2 provides in pertinent part:

> **"(a) Employer practices**
> a.    It shall be an unlawful employment practice for an employer—
> > **(1)** to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;"

114.    Plaintiff has filed this cause subsequent to a timely filing of a Charge of Discrimination against NORTHWESTERN based upon race, sex, national origin, and retaliation with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission, a true and correct copy of which is attached to this Complaint as Exhibit "C".

18

115. Plaintiff has filed this cause pursuant to a "Right to Sue Letter" issued by the Equal Employment Opportunity Commission within the statutory time requirement, a true and correct copy of which is attached to this complaint as Exhibit "D".

116. Plaintiff, at all times pertinent to this Complaint, was a resident within the venue and jurisdiction of this judicial district and was within the protected race group (Black) sex group, (female) and national origin group (Nigerian) as provided by Title VII.

117. The Defendant at all times relevant to this Complaint, operated and did business within the venue and jurisdiction of this judicial circuit.

118. During the course of her employment the Plaintiff came under the supervision of ERNIE, RICHARD, MICHAEL, JOE, CHARLES, PEDRO and GRISELDA, who subjected ADESUWA to differential terms and conditions of employment because of her race, sex, and/or national origin in the following manner: refusing to promote ADESUWA even when she was the most qualified candidate.

119. The Defendant NORTHWESTERN'S conduct as previously alleged at length herein and as described in the Charge of Discrimination attached to this Complaint constitutes discrimination based upon race, sex, and national origin, in direct violation of Title VII.

120. As a result of Defendant's discriminatory conduct, Plaintiff has been damaged in her career and to her person and has otherwise suffered monetary damages.

121. WHEREFORE, Plaintiff ADESUWA ALOHAN, demands judgment against the Defendant, NORTHWSTERN as follows:

    A. For retroactive promotion back to 2010, with all back pay, benefits and other emoluments of employment;

    B. For an award of $300,000 in compensatory damages suffered because of the discrimination;

C.     For Plaintiff's injury to her career, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary damages and fringe benefits;

D.     For attorney's fees and costs of this suit, pursuant to applicable statute; and

E.     For such other and further relief, as is just and equitable.

## COUNT III
## VIOLATION OF 42 USC § 1981 – AGAINST CBRE and NORTHWESTERN

122.    Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through 101.

123.    The claims against the Defendants herein are based upon discrimination based upon race, sex and national origin

124.    Jurisdiction arises pursuant to 28 U.S.C. § 1343.

125.    Venue is appropriate as ADESUWA'S residence, and Defendants residence and business, as well as all events giving rise to this claim occurred within the counties served by this Court.

126.    Title 42 U.S.C. § 1981 provides in pertinent part:

127.    "(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined
For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment
The rights protected by this section are protected against impairment by nongovernmental discrimination …"

128.    At all times herein mentioned, ADESUWA was a person protected by the provisions of 42 U.S.C. § 1981.

129. All Defendants deprived ADESUWA of her rights to make and enforce contracts granted to herby statutes of the United States when they deliberately and intentionally discriminated against her based upon her race, sex and national origin by setting in place a campaign designed to, and did, result in ADESUWA'S harm.

130. Defendants CBRE and NORTHWESTERN maintain a widespread practice of treating Black employees, (based upon their race, sex, and national origin) especially ADESUWA less favorably than her co-workers who are not Black, female and Nigerian.

131. Although the practice is not authorized by written law or express company policy, the practice of discrimination in the nature of disparate treatment, denial of promotion, and the creation of a hostile work environment is so permanent and well-settled as to constitute a custom and/or usage with the force of law.

132. Defendants CBRE and NORTHWESTERN'S practices represent a widespread practice of discrimination based upon race, sex and national origin, especially towards Blacks, women and Nigerians.

133. ADESUWA was treated less favorably than her colleagues because she is Black, female, and Nigerian, caused by an existing, unwritten, unconstitutional policy, which is directly attributable to a final policymaker.

134. The final policy makers for Defendant CBRE include JOE, PEDRO, ERNIE, MIKE, GRISELDA, CHARLES and RICHARD, and other members of management, including those in HR.

135. ADESUWA alleges a pattern of conduct that gives rise to a plausible claim that an unconstitutional custom, pattern, or practice exists. Specifically, Blacks, women and Nigerians who occupy the position of Stationary Engineering are treated differently and denied the same

opportunities as their Caucasian, male and North American counterparts because of discriminatory animus and intent.

136. This supports ADESUWA'S claim of having suffered adverse employment actions by conduct tantamount to harassment, and denial of promotional opportunities.

137. ADESUWA has been employed by NORTHWESTERN and CBRE since 2005 when she entered into an agreement for employment with Northwestern Hospital.

138. Plaintiff at all times material to this Complaint proved her industriousness, presented and represented herself in an orderly and respectful manner and commanded and continues to command the respect of her fellow employers.

139. Additionally, ADESUWA demonstrated her capacity and abilities to perform all job tasks to which she was assigned.

140. Rather than support ADESUWA in her position of *Stationary Engineering*, Defendants CBRE and NORTHWESTERN intentionally discriminated against ADESUWA in the following ways: by refusing to promote her to the position of Assistant Manager twice in 2010, in 2018, by refusing to promote her to Lead Engineer for the BOS Project in 2019, and for retaliating against her for complaining about discrimination against her while working at NORTHWESTERN CBRE.

141. CBRE's and NORTHWESTERN'S intentional discriminatory animus through the actions of its employees JOE, PEDRO, ERNIE, MIKE, GRISELDA, CHARLES and RICHARD, and other employees in management and HR are all based upon race, sex and national origin.

142. CBRE and NORTHWESTERN knew about or reasonably should have known about the hostile work environment created by JOE, PEDRO, ERNIE, MIKE, GRISELDA, CHARLES and RICHARD, and other management employees, including Stephanie Beck in HR and failed to take appropriate remedial action to protect ADESUWA.

143.    JOE, PEDRO, ERNIE, MIKE, GRISELDA, CHARLES and RICHARD, and other members of

management, including Stephanie in HR, intentional discrimination interfered with ADESUWA'S

right to enforce her agreement with CBRE and NORTHWESTERN including the performance,

and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

144.    As a result of the Defendants CBRE'S and NORTHWESTERN'S, discrimination based upon

race, sex, and national origin, ADESUWA has suffered injury to her career, as well as emotional

pain and suffering, inconvenience, mental anguish and loss of enjoyment of life, and other losses

for which she is entitled to compensatory damages in accordance with 42 U.S.C. § 1981.

b.    WHEREFORE, Plaintiff ADESUWA demands judgment against the Defendants CBRE

and NORTHWESTERN, as follows:

A.    Actual damages in the amount of lost wages and back pay from 2010 to present,

including any differential in pay as a result of the failure to promote;

B.    Compensation for loss of employee benefits, including medical, dental, life,

401K, pension, stock options and retirement benefits;

C.    Additional compensatory damages for Plaintiff's mental anguish, pain, and

suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary

damages and fringe benefits;

D.    Additional compensation for damages to and the loss of ADESUWA'S career;

E.    For punitive damages;

F.    All reasonable and necessary attorney's fees incurred as specified;

G.    All costs of court; and

I;    Such other and further relief as this court deems just and proper.

## COUNT IV
## RETALIATION AGAINST CBRE and NORTHWESTERN

145.     Plaintiff realleges and incorporates by reference paragraphs 1 through 95 inclusive.

146.     Plaintiff has been subjected to racial, intimidating, humiliating and derogatory statements, denied promotions, in retaliation for opposing and making charges regarding conduct Plaintiff reasonably believed to be an unlawful employment practice under Title VII in violation of 42 U.S.C. § 2000e-3(a).

147.     As alleged above, these actions began occurring before and during the time ADESUWA lodged a complaint about the denial of promotions.

148.     To date, Plaintiff continues to be harassed and retaliated against by her supervisors JOE, PEDRO, ERNIE, MIKE, GRISELDA, CHARLES and RICHARD who continue to single Plaintiff out for mistreatment, denial of promotion and denial of her union grievances..

149.      A reasonable person in Plaintiff's position would find the Defendant's actions materially adverse.

150.     Defendants acted willfully and in bad faith.


WHEREFORE, Plaintiff demands judgment against Defendant CBRE and NORTHWESTERN for promotion, damages in the nature of lost income compensatory, prejudgment interest, attorneys' fees, costs, and such other and further relief as the court deems proper.

## COUNT V
## VIOLATION OF THE COLLECTIVE BARGANING AGREEMENT

151.     Plaintiff realleges and incorporates by reference paragraphs 1 through 101 inclusive.

152.     At all material times Plaintiff was represented by the International Union of Operating Engineers, Local 399; ("the Union").

153.    The Union is a party to a Collective Bargaining Agreements ("CBA") representing the certain employees of CBRE and NORTHWESTERN, including ADESUWA.

154.    The CBA specifies the protocol under which employees may request transfers within job classifications and seek promotions to new job classifications.

155.    Under the operative CBA, promotions are granted based on experience and seniority.

156.    Seniority is defined as an employee's continuous service in the employee's current job title.

157.    CBRE's and NORTHWESTERN'S consistent and deliberate improper conduct, based on race, sex, and national origin failed to follow written policies governing promotions, as related to the Plaintiff.

158.    Plaintiff was denied the opportunity to have her grievance timely addressed with the Union related to denial of promotion

159.    Plaintiff believed that Union protocol required Plaintiff's grievance to be timely addressed.

160.    CBRE deliberately overlooked the seniority of Plaintiff by utilizing a biased selection process to award promotion to their friends and to offer excuses such as *Elaine did better on the interview* and *we wanted Elaine for the position* or the pretext of *lack of experience* to justify the failure to offer to Plaintiff a promotion to assistant manager, and/or Lead Engineer for the BOS project in violation of the CBA.

161.    Plaintiff exhausted the contractual grievance/arbitration procedures set forth in the CBA, prior to the filing of this lawsuit.

162.    Local 399's conduct in processing the grievance, as set forth above,  filed by the Plaintiff
was arbitrary, discriminatory and in bad faith, to the point that the Union breached its duty of
good faith and fair representation.

163.    As a result of the CBA's failure to timely process Plaintiff's filed grievances, and
ultimate unfair and unjustified denial of said grievances, Plaintiff has standing to seek
enforcement of the CBA through this Court.

WHEREFORE, Plaintiff demands judgment against Defendant CBRE for promotion, damages in
the nature of lost income compensatory, prejudgment interest, attorneys' fees, costs, and such other
and further relief as the court deems proper.

## COUNT VI
## VIOLATION OF THE ADEA

164.    Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through
101 above.

165.    Plaintiff brings this action pursuant to the Age Discrimination in Employment Act of
1967. ("ADEA"), 29 U.S.C.A. §§621 et seq.

166.    Jurisdiction also arises pursuant to 28 U.S.C.A. §1343(4).

167.    Plaintiff has filed this cause subsequent to a timely filing of a Charge of Discrimination
based upon age with the Illinois Department of Human Rights and the Equal Employment
Opportunity Commission, a true and correct copy of which is attached to this complaint as
Exhibit "A", and "C".

168.    Plaintiff has filed this cause pursuant to a Letter issued by the Illinois Department of
Human Rights and the Equal Employment Opportunity Commission within the statutory
time requirement, a true and correct copy of which is attached to this Complaint as Exhibit
"B", "D".

169.    Plaintiff, at all times pertinent to this Complaint, was a resident within the venue and jurisdiction of this judicial district and was within the protected age group as provided by the ADEA.

170.    The Defendants at all times relevant to this Complaint, operated and did business within the venue and jurisdiction of this judicial circuit.

171.    Plaintiff was employed by the Defendants since approximately 2006.  At the time of her of the events giving rise to this complaint, ADESUWA was 47 years of age.

172.    In direct violation of the ADEA, the defendants engaged in the age discriminatory acts described in the Charges of Discrimination, attached to the complaint, and incorporated herein by reference, including but not limited to:

    a.      Refused to promote ADESUWA to the position of Assistant Manager and Lead Engineer.

    b.      Treated ADESUWA differently from other similarly situated employees;

    c.      Created a hostile work environment by the activities listed above;

    d.      Failed and refused to conduct an honest, open and good faith grievance of discrimination charges levied by ADESUWA.

173.    As a result of Defendant's discriminatory conduct, Plaintiff has been damaged in her career and has otherwise suffered monetary damages.

WHEREFORE, Plaintiff ADESUWA, demands judgment against the Defendants, CBRE and NORTHWESTERN as follows:

A.  For damages in an amount equal to all back pay lost by Plaintiff.

B.  For an award of compensatory damages for Plaintiff's injury to her career, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary damages and fringe benefits;

C.  For immediate promotion to the Lead Engineer BOS position, or in the alternative, for front pay, pursuant to Section 7 (e) of the ADEA, 29 U.S.C.A. §626 (b);

D.  For Attorney's fees and costs of this suit, pursuant to Section 7(b) of the ADEA, 29 U.S.C.A. §626 (c); and

E.      For such other and further relief as is just and equitable.


## COUNT VII
## VIOLATION OF THE ADEA WILLFUL VIOLATION

174.    Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through 101 and 164-173 above.

175.    Defendants' discriminatory conduct was intentional and/or in reckless disregard for Plaintiff's rights under the law and these acts constitute willful indifference to said rights.

WHEREFORE, Plaintiff ADESUWA demands judgment against the Defendants CBRE and NORTHWESTERN as follows:

A.  For damages in an amount equal to Plaintiff's back pay and benefits pursuant to Section 7(b) of the ADEA, 29 U.S.C.A. §626 (b);

B.  For an award of compensatory damages for Plaintiff's injury to her career, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary damages and fringe benefits;

C.  For immediate promotion to the Lead Engineer position or assistant manager position, or in the alternative, for front pay, pursuant to Section 7 (e) of the ADEA, 29 U.S.C.A. §626 (b);

D.  For Attorney's fees and costs of this suit, pursuant to Section 7(b) of the ADEA, 29 U.S.C.A.

§626 (c);

E.  Punitive damages; and

F.  For such other and further relief as is just and equitable

Respectfully submitted,

ADESUWA ALOHAN

By;    <u>s/ Calvita J. Frederick</u>
         Attorney for Plaintiff

Calvita J. Frederick
Post Office Box 802976
Chicago, Illinois 60680-2976
312-421-5544
ARDC # 6184001
Calvita.frederick@att.net

29